Good morning, may it please the court, I'm Stephen Fiebiger on behalf of the appellant Curtis Pronk. Curtis Pronk worked as the administrative services manager for the Rochester Fire Department for 15 years, receiving successful performance reviews and positive comments about his contributions to the department, work product, and relatability with others in keeping the department running smoothly from his supervisors, including the deputy chief and the fire chief. But things changed after he turned... You need to move that mic a little bit for me, I'm not picking up articulation. How about that, I'll lean into it a little bit. Maybe slow down. I'll try, thank you. Things changed after Mr. Pronk turned 60, when his working conditions became progressively unbearable and so intolerable that he did what a reasonable person in a situation would do, he resigned. I plan to address how the district court erred, granting summary judgment on Mr. Pronk's constructive discharge claim under the ADEA and MHRA because of his age. My tentative view of this case is, we affirm if you didn't make a triable claim of constructive discharge, because that's fatal to all the different claims. I understand, and that's why I plan to put my focus... Disagree? No, I think that's really the crux of the issue we have on appeal, and that's what I'm looking at. I mean, we have pages and pages of multiple issues, but the way I parse them out is constructive discharge is the key to the kingdom. I agree, and I think really looking at the entirety of Mr. Pronk's working conditions is what's important here for his constructive discharge claim, and it really begins with the alternative review discussion of December 2020 by his supervisor, Deputy Chief... How old is he at that time? 60. Okay, what about other minor, but other issues before? There was the cake issue. There are several other minor issues that are emphasized by the other side. How are, how do they, what's your view of those? My view is that those don't come into play in the case. I think those were maybe sporadic, if that, during the course of his 15-year career. Aren't they equivalent to what happens at age 60? I don't think so. I think by looking at the evidence none of those events are emphasized in terms of why this reclassification took place in July of 2021. Those minor events, as I would label them, really didn't take any traction at the time they occurred, and I think if they were important, they should have been addressed at the time. What's your best evidence? Usually we have statements by somebody, stray statements, maybe not even good statements. We have some, they're not even smoking guns, but at least we have guns. What is the gun in this case? What is the best evidence of real age discrimination? Yes, so moving fast forward, we sent out all the emails of kind of the criticisms that he was encountering up until the July 20th, 21 meeting, and he was told by his supervisor, Deputy Chief Swisher, that this is his performance review meeting. It was a little unusual because this was deemed a six-month performance review, and the reviews had been habitually late at the fire department, but apparently they decided, or Deputy Chief Swisher did, that the six-month review was required. He said, it's going to be you and me, we'll meet, we'll go over the review, and that's it, nothing to worry about. Mr. Prong shows up at the appointed time, and as he described it, it was like a termination meeting. Not only is Deputy Chief Swisher there, but so is the fire chief and the HR representative, Jennifer Simpson, and they spent very little time on the actual performance review, and instead switched gears to look at this idea of reclassifying his position. You know, what is it that he could continue to do moving forward? And the essence of it, as Mr. Prong described it, was very stressful and very accusatory, which is hardly a constructive medium for trying to improve someone's performance. The performance issues really weren't attended to as they should have been, if there were significant issues that needed addressing, but what's critical to this meeting is, that's where he was essentially told this reclassification is going to occur, and the chief had told him, according to Mr. Prong, that his pay would be reduced. Subsequently, it was, and to the tune of $11,873. His supervisory duties had already been removed by the deputy chief in June. Without explanation, he said, according to Mr. Prong, I'm taking the girls back. So he was relieved of supervisory duties as the administrative services manager, and the reclassification process essentially had started at that point. Let me interrupt you. I know your time's short. Are you familiar with the Tatum case? It's a 2000 case of this Court. Yes. Okay, great. Most of the words you've said are there in Tatum in quotes, saying they don't support a constructive discharge claim. What do you say to that? I think Tatum, as it was construed in subsequent cases, is misread. I think the language that's extracted from Tatum talked about Loss of responsibilities, unfairly criticized, dissatisfaction, and loss of pay. Yes. Without all your same checkboxes. And in Tatum, that reference came where the Court said, in varying cases, and it went through each item where they went. And here, we need to look at the whole picture, not in isolation. Are you saying Tatum is wrong, or it's been misconstrued? I think it's been misconstrued. Really, it's been cited by the headnote and not the text of the opinion. Well, that's a the quote I gave you is from the opinion. You understand that? Yes. Okay. But I think it is also preceded by the language, in varying cases. Yes, it is. Go ahead. So I think that's a distinction that needs to be considered.  Also, with respect to the constructive discharge, after the performance review meeting in July, July 20th, he was asked to provide some input about what he could do moving forward. Everything he submitted was rejected. Or, you know, we had the blunt email by Deputy Chief Swisher telling him he'd never been successful before, and he wouldn't be successful moving forward. That was with respect to the administrative services position. Well, he had been successful, and the record he presents shows that. After that meeting, he did submit information for the new administrative services specialist position. That was rejected because the HR specialist said it was untimely. He sent it in the day he was supposed to. He said it was timely. So moving onward, on the meeting of August 2nd, 2021, with Deputy Chief Swisher and Ms. Simpson, he was given the new administrative services specialist performance or job description. It showed that he was reduced two grades to a grade level four from grade six, and his salary was reduced. Subsequently, and here's the main key that made his life intolerable. On August 9th, 2021, he received a memo from Deputy Chief Swisher that piled on additional duties. His job had been rated at a lower grade level, the salary had been reduced, and then he was given this memo by Deputy Chief Swisher that piled on additional duties and that was in the last quarter of the year. And not that he didn't want to do his job, but that was unbearable and unrealistic to complete those duties that weren't part of his job description, and he was being paid less. So he decided to resign. I'll save the balance for my rebuttal. Thank you. Mr. Wolff, we'll hear from you.  May it please the Court, my name is Andrew Wolff and I'm here on behalf of Appellee's City of Rochester, Eric Kerska, Van Swisher, and Linda Hillebrand. Your Honor, this case is not about discrimination. If anything, it's a case about prejudice, specifically prejudice meaning prejudging something based on a preconceived notion. This is precisely the type of prejudice that Appellate Kirk Pronunciation exhibited here when he prejudged the reasons for his reclassification based on his perception of age discrimination. But perception is not reality, and the reality here is that the City reclassified Mr. Pronk's position due to documented performance issues, to support the department's strategic restructuring, and to better meet the department's needs. The District Court correctly granted summary judgment for three primary reasons. As Judge Loken noted, the first primary reason, Mr. Pronk was not constructively discharged. Those are the keys to the kingdom. Second, the City had legitimate non-discriminatory reasons to reclassify Mr. Pronk's position. And third, there's simply no evidence of pretext, which, Judge Benton, you kind of touched on there. Judge Benton Well, let me go even plainer. So by the way you structure the issues, you concede that there is a prima facie case. Eric Kerska No, Your Honor, I do not, because as part of the prima facie case, there has to be an adverse employment action. And here it's understood that Mr. Pronk decided to retire, claimed that this was a constructive discharge. And he cannot show he was constructively discharged for any of his federal claims, because under the Eighth Circuit precedent... Judge Pronk Wait a minute. What element of the prima facie case is that? Eric Kerska An adverse employment action due to age-based animus. Judge Pronk He had an adverse employment action. I mean, the prima facie case is not proof of age of discrimination. It's a combination of facts that lead to a reasonable, at least inferential, possibility of discrimination. So what element of the prima... I don't understand your answer, the way you're marshaling the  Eric Kerska No, Your Honor, in the absence of a discharge, the standard would be a substantial detriment in the terms of employment. Whereas here, Mr. Pronk retired before he ever took a different position, before his salary ever changed. He chose to retire because he didn't want to take a reclassified job. Judge Pronk Why don't you just say that we're not... I don't even know if the prima facie case is on appeal. Eric Kerska What he said was there was no evidence of a prima facie case for any of his federal age discrimination claims because he could not prove a constructive discharge, which under this Court's precedent, Blake v. M.J. Optical, Phillips v. Taco Bell, Summit v. S.B. Power Tool, those are just a few. A plaintiff can't establish a constructive discharge without first reporting perceived age discrimination and giving the employer a fair chance to address that issue. Here it's undisputed. Mr. Pronk never reported what he perceived to be age discrimination to any leaders within the City of Rochester or any of the defendants. So we have essentially an undisputed fact that the, not fact, but it's undisputed that all of his federal age discrimination claims should fail for that reason. The only question is whether the MHRA claim would survive. Often there's a fourth factor to the prima facie case. Was he replaced by someone sufficiently younger? That's in many of our cases. Now he's replaced by someone 10 years younger, right? No, Your Honor, he was not replaced by someone 10 years younger. Was that the best evidence of the case for him, 10 years younger? The best evidence, I believe, what Mr. Fuebiger said was that his six-month performance review was very hostile. He took the position. I thought the best view for them was it was someone who was 50 and he was 60. Sure. So the individual is actually over 50, but that would be on a pretext. Well, no, wait, hold on. How old was the person he was replaced by? We don't have any evidence on the record of his exact age. We have testimony from Deputy Chief Swisher saying, I believe he was my age. I don't know that, but based on life experiences we've had, you know, when we went to college, we were probably the same age. So that's where the 50 comes from. Well, how old was the man testifying? You haven't answered the question. He would have been 50, over 50 in 2002 when Jeremy Emme was hired. Is that in the record? That is in the record, Your Honor. Over 50? In 2022 when Mr. Emme was hired. His birthday was in February. I'd have to look to see specifically what date, if that's in the record, when. So he was 50 years old plus some months. Or 51. It's unclear. However, what's clear is that that individual was hired to fill a separate position. I'm going to talk about the best view of evidence for the other case. I've got a simple question, by the way. And I thought the lead-up to it was simple, too. But don't be concerned about that. What is the longest time frame? You know, we have several cases that say four years and five years don't meet the prima facie case. For a comparator. Right. Correct. Correct. Yes. Your brief, I think, had the four and five, the standard stuff. What's the longest period you found? The longest period I found where they say that's too close. So in, let me see if I have it specifically here. There was the, and I have it in my notes back there. But there was a case where an individual claimed they were 60 and they claimed that they were discriminated against because younger employees were hired to fill a position. The court said there was 19 people hired during this temporary work shortage. And four of them were over the age of 50. So in that case, the court wasn't saying specifically the individual replacing you was within this many years. It was saying these individuals are above the age of 50. In other words, these individuals are part of the same protected class. Yes. And the individuals were of the same protected class as the person who was a, please proceed with your argument. Why would the MHRA case possibly be different? Because under the Eighth Circuit law, if you don't notify your employer that you believe you're being discriminated against. I understand that part. Why would the MHRA claim be different? In Henry, the Henry case, the Minnesota Supreme Court said for the MHRA, we're not going to require this, what they called mitigation or notice to the employer rule. We're not going to apply that. But what the court, district court did here is it put on belts and suspenders and said, even if I don't apply that rule, I'm still going to find that there's no constructive discharge because there's no intolerable working conditions and there's no employer intent. It went even further and said, there's no pretext. So we've got three bases that the district court all correctly concluded. I hope you're going to get around to responding to the argument on what counsel agreed was the key to the kingdom. To construct whether there was sufficient claim evidence of constructive discharge to go to trial. Well, Your Honor, I did just point out that there is no evidence of constructive discharge. It's undisputed that Mr. Pronk did not report to his supervisor that he believed he was being discriminated against based on his age. So that defeats a loan claim? Under the Eighth Circuit precedent, it does. MJ Optical. What case? MJ Optical, Summit v. S.P. Power Tool, Phillips v. Taco Bell. It's also in the Eighth Circuit Court of Appeals jury instructions that that is a rule that the Eighth Circuit place applies. You say MJ Optical? Yes, and these are all in our brief as well. Blake v. MJ Optical, Phillips v. Taco Bell, and Summit v. S.P. Power Tool. Like I said, though, the MHRA claim, well, it's not really notice as much as a reasonable opportunity, right? I'm trying to think of the words we used in those cases. We don't really talk about a notice, I think, of like legal notices. We talk about did the employer have a reasonable opportunity to correct. Am I right? In MJ Optical, I believe the words specifically used were provide without first reporting perceived age discrimination and giving the employer a fair chance to address it. Okay. The other words that were used in other cases were an employee has an obligation not to jump to conclusions. And that obligation applies here. Mr. Pronk jumped to conclusions, thought this is happening to me because of age, was unwilling to look at the. And then on the State law claim, you're saying that rule doesn't apply, but you think he did not show intolerable working conditions or intent. Correct. Is intent a requirement under Minnesota law for constructive discharge? It is. In that same Henry case, the Court said we're going to adopt that standard. Intent to do what? Intent to force the person out? Intent to force them to resign, which can also be shown by it being a reasonably foreseeable consequence of the discriminatory actions. Okay. And I'm out of time here. Yes, you are. But I would just reiterate that we are asking the Court to affirm the judgment of the district court below. Thank you for your argument. Thank you. We'll hear a brief rebuttal. Just a couple of points in rebuttal. Mr. Pronk was replaced by Jeremy Emme. Our evidence submitted shows he was 50 years old. That's what Deputy Chief Swisher testified to. And I would point out that most of the Eighth Circuit cases involved harassment-type conduct that prompted the requirement to report to try to correct it, not disparate treatment like Mr. Pronk is arguing here. So there's a difference in terms of the ability of the employer to take action to fix it. Well, the employer could stop the disparate treatment. If there really was such treatment and the employee complained about it or reported it. I'm sorry. Here, that wouldn't be feasible when the employer is intentionally trying to force him out. It was one thing after the next. By asking them to stop doing that, that wouldn't fix it, in our view. Now, where did he tell the employer, I think you're trying to force me out? Where is that in the record? He did not say that directly. He did submit his. Well, he debated at that last meeting with Swanson and Swisher. Right. He told them what he was doing. He had a difference of opinion. Right. Yes. They never asked him what duties he was doing. There was no discussion of age in that, was there? No, but he was the oldest one at the fire department. That was no secret. So what? I mean, I'm the oldest one on the age circuit right now. So what? If I don't like my assignments, that's age discrimination? That's not what Mr. Pronk is arguing. Okay. Well, very well. Thank you for your argument and thank you to both counsel. The case will be submitted and the court will file a decision in due course. That concludes the argument.